AMERICAN SAVINGS BANK, F.A., Keystone Holdings, Inc., Keystone Holdings Partners, L.P., N.A. Capital Holdings, Inc., New American Capital, Inc., and New American Holdings, Inc., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 92–872C.

United States Court of Federal Claims.

April 18, 2002.

---

**5.** The Federal Circuit remanded *Bluebonnet* for the trial court to reconsider damages. If the standing issue was argued on appeal, it was not addressed in the Circuit's opinion.

Melvin G. Garbow, Washington, D.C., with whom were Howard N. Cayne and Edward H. Sisson, Washington, D.C., for plaintiffs.

William F. Ryan, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director, for defendant.

## OPINION

SMITH, Senior Judge.

The court has before it plaintiffs' and defendant's cross-motions for summary judgment as to liability.

On September 7, 2001, after consideration of defendant's motions to compel liability discovery and plaintiffs' motion for entry of judgment as to liability, the court denied the motions and ordered defendant to file its response to plaintiffs' liability motion. *American Sav. Bank v. United States,* 50 Fed.Cl. 586 (2001). The court noted in the order that plaintiffs had submitted to the court "one of the strongest *prima facie* demonstrations of the existence of a *Winstar*-type contract." *Id.* The court advised the parties that it would review the government's response, and any cross-motion as to liability, and determine based on that filing whether the court needed further briefing to resolve the motions as to contract liability. *Id.* at 587–88.

Upon review of defendant's response to plaintiffs' motion for summary judgment as to liability and cross-motion for summary judgment, the court determines that further briefing on the liability motions is unnecessary. Defendant has raised neither a genuine issue of material fact to defeat plaintiffs' motion for summary judgment, nor a tenable legal argument to support its own motion. Accordingly, plaintiffs' motion for summary judgment as to liability is granted and defendant's cross-motion is denied.

## I. Material Change of Law

Defendant's response and cross-motion reveals that the government agrees there was a *Winstar*-style capital contract regarding the two forbearances at issue in this case, the Note Forbearance and the Warrant Forbearance. The government further agrees that these forbearances were eliminated by FIRREA. However, the government argues that the contract expressly anticipated the possibility that the law could be changed and included a provision requested by plaintiffs which relieved the plaintiffs (or, more particularly, plaintiff Keystone Holdings) of the obligation to make tax benefit payments to the FSLIC in the event of a Material Change of Law. Subsequent to the passage of FIRREA, Keystone invoked the Material Change of Law provision of the Assistance Agreement and ultimately reached a Settlement Agreement with the FSLIC which limited the amount of tax benefits payment it had to make to the FSLIC.

It is defendant's contention that the contract therefore worked as planned, and there has been no breach: the parties foresaw the risk in a change of the law and dealt with it contractually. Plaintiffs invoked the Material Change of Law provision and arrived at a settlement pursuant to the contractual provisions.

Of course, plaintiffs do not dispute these facts: Keystone Holdings did invoke the Material Change of Law provision of the Assistance Agreement and did arrive at a settlement of that claim which reduced the amount in achieved tax benefits it was required to pay to the FSLIC. Plaintiffs do not dispute that, as to the issue of the tax benefits, the contract worked as planned: plaintiff Keystone Holdings was able to invoke the Material Change of Law provision and to lower its affirmative obligation to make the tax benefit payments to the FSLIC. Plaintiffs vigorously contest, however, the government's contention that the Material Change of Law provision was an exclusive remedy which barred any claim for damages based on a breach of the promises regarding the forbearances. Rather, plaintiffs contend that the risk allocation provision is expressly confined to the one issue of Keystone Holdings'

affirmative obligation to make payments to the FSLIC and merely alters the performance which Keystone Holdings needs to make in the event of a material change in the law.

After careful review of the Assistance Agreement, it is abundantly clear that the plaintiffs' interpretation of the scope of the Material Change of Law provision is the correct one, and does not operate to preclude a claim for damages. The plain language of the Assistance Agreement and common sense demand this conclusion, and the course of the parties' dealings in arriving at the Settlement Agreement confirm it. The Material Change of Law provision of the Assistance Agreement does not foreclose plaintiffs' claim for damages. Indeed, the case for this interpretation of the Assistance Agreement is so compelling that the court is surprised defendant makes the argument at all.

Section 9 of the Assistance Agreement is titled "Tax Benefits." Under the provision, Keystone Holdings was required to make tax benefit payments to the FSLIC in the amount of approximately 75 percent of the taxes saved by using losses from the acquired thrift to shelter income. Under Section 9, Keystone Holdings in effect guaranteed that those payments would be at least $300 million.[1] Section 9 also included a provision, Section 9(i), entitled "Effect of Material Change of Law," which provided a mechanism for Keystone to initiate procedures to alter its obligations in the event of a change in the law. In the Definitions portion of Section 9, "Material Change of Law" is defined as follows:

[A] change in tax or non-tax law after the Effective Date, including, without limitation, a change in the Closing Agreement, the Forbearance Letter, any Federal, state or local statute, court decision, regulation, ruling or other administrative practice or order, or any lapse or reinterpretation of existing law (a "Change of Law"), which prevents Parent Company Group from utilizing, or makes it impracticable for the Parent Company Group to utilize, the

items of tax deduction elimination from the computation of Adjusted Hypothetical Federal Income Tax Liability. . .

Assistance Agreement § 9(h)(15).

It is clear from these provisions of Section 9 that the Material Change of Law provision was designed to protect Keystone Holdings from its affirmative obligation to make payments to the FSLIC in the event that a material change in law made it more difficult to achieve earnings which the losses could shelter. In short, as plaintiffs describe it, it "simply expressed the government's agreement that it would not both limit the tax benefits plaintiffs would otherwise achieve, and thereby put the Tax Benefit guarantor at risk, and still insist on full performance by the guarantor." Pl. Reply at 28.

Defendant does not appear to dispute this interpretation of Section 9, but argues that the Material Change of Law provision is the sole avenue for plaintiffs should the law be changed. The language of the Assistance Agreement simply does not support this. It should be remembered that Sections 9(i) and 9(h)(15), which explain and define, respectively, the Material Change of Law provision, are contained *within* the provision dealing with tax benefits. Moreover, the definition of Material Change of Law in Section 9(h)(15) and its explanation in Section 9(i) is expressly confined to Section 9. Section 9(h) reads as follows: "(h) *Definitions. For purposes of this § 9*, the following definitions apply" (emphasis added). It is clear, then, that the Material Change of Law provision is not a general risk allocation provision, as defendant argues. In an Assistance Agreement which runs 219 pages and contains 48 sections, it is a contractual avenue for Keystone Holdings to pursue should a discrete problem arise: that is, Keystone's ability to generate tax benefits is compromised by action of its contracting partner, the government. It certainly does not act to foreclose a claim for damages as a result of the breach of the forbearances.

Defendant's argument that the history of the negotiations argues in favor of viewing

1. The tax benefit payment was a pay-as-you-go obligation. However, Keystone Holdings promised to pay the difference between the amount actually paid and the "Guaranteed Minimum Amount" of $300 million if payments had not reached $300 million by 1995.

the material change of law provision as a general risk sharing provision is flatly unpersuasive, even were the Assistance Agreement, and Section 9 in particular, not already clear. According to defendant, plaintiffs originally sought to include the forbearances in the Assistance Agreement, but regulators demurred. Plaintiffs then suggested that the forbearances be incorporated by reference into the Assistance Agreement. Defendant then points to successive drafts of the Assistance Agreement showing the addition of a provision regarding the Material Change of Law adding the forbearance letter to the definition. Therefore, according to defendant, the negotiations show that plaintiffs and defendant expressly resolved the issue of the change in the forbearances by providing a remedy in the contract regarding the tax benefit payments.

The problem with this interpretation, aside from the clarity of the contractual document itself, is the fact that the document that is the springboard for this analysis suggests exactly the opposite conclusion. The document is an August 10, 1988 lawyer's memo detailing "open points" in the ongoing negotiations with suggestions of possible resolutions to various problems. What is abundantly clear from the memo is that the tax benefit issue and the contractual status of the forbearances *are considered by plaintiffs' counsel* to be two very different issues. The attorneys are clearly concerned about the enforceability of the forbearances and also the plaintiffs' obligations under the tax benefit sharing provisions. Although these two issues can be related, they are discrete, and plaintiffs suggest two different solutions to deal with the two problems: first, plaintiffs make the suggestion that the forbearances be incorporated by reference to deal with the issue of their contractual status. Second, to deal with the tax benefit issue, they suggest elimination, or modification, of the tax benefit guarantee. Defendant's parsing and selective recitation from the memorandum in its brief suggests that plaintiffs' attorneys were advocating something quite different, indeed the opposite of what was actually being proposed for negotiation: that plaintiffs were advocating one course of action-the modifica-

tion of the tax benefit provisions-as a universal solution to both problems.

The addition of the "Forbearance Letter" into the definition of "Material Change of Law," which defendant points to as being especially revealing strikes the court as good lawyering by counsel for plaintiffs. The plaintiffs wanted to insure that they could invoke the provisions of, and reduce their obligations under, the tax benefit provision even if the government challenged the contractual status of the forbearances. Its inclusion does not mean that plaintiffs abandoned their belief that the forbearances were contractually enforceable.

Were the language of the Assistance Agreement not clear enough, common sense mandates the same interpretation. The investor plaintiffs contributed, according to the government's brief, $400 million to the transaction. Under the government's interpretation of the contract, the parties expressly negotiated a complete risk-sharing and shifting provision contained in Section 9 of the Assistance Agreement. According to the government's interpretation, then, the government could seize the thrift pursuant to law or regulation, and with it plaintiffs' capital investment, and plaintiffs' only recourse, under the "Material Change of Law" provision, would be to free Keystone Holdings of its *obligation* to pay an additional $300 million to the FSLIC. There apparently would be no recourse to recover the lost capital investment or any actual damages suffered. It is irrational to think that seasoned negotiators and businessmen would expose such a large capital investment (not to mention the potential return on the investment) to elimination, in exchange for a promise not to have to pay even more money should their investment be seized or otherwise compromised by its contracting partner.

Lastly, although it is unnecessary to the interpretation of the unambiguous contract language, the course of dealing of the parties after FIRREA shows that plaintiffs filed their Section 9 notice and entered negotiations with the express understanding that they were reserving their rights to litigate other disputes, and that regulators under-

stood that reservation. The final Settlement Agreement affirms this understanding:

> There are a number of disputes which exist between the parties with respect to the Transaction Related Documents. This settlement Agreement relates solely to the dispute over whether or not a General or Stockton Material Change of Law has occurred as set forth in the [Material Change of Law] Notices.

It is clear and unambiguous that the Material Change of Law provisions of the Assistance Agreement do not operate to waive plaintiffs' ability to seek damages for breach of contract. Plaintiffs are therefore entitled to damages based on the breach of the contractual promises regarding the Note Forbearance and the Warrant Forbearance.

## II. Additional Issues

Defendant contends that plaintiffs are not entitled to recover because the Settlement Agreement presumptively bars recovery, and any additional recovery would be a windfall or double recovery. Since the contract does not read as defendant contends it does, there is no issue of whether there is a double recovery. Plaintiff Keystone Holdings was able to reduce its obligations under the material change of law provision. Whether, and to what extent, Keystone and the other plaintiffs were damaged, and to what extent the Settlement Agreement mitigates those damages, are questions for the damages portion of the case.

### CONCLUSION

Based on the foregoing, plaintiffs motion for summary judgment as to liability is granted, and defendant's cross-motion is denied.

Plaintiffs have also filed a motion for a status conference, which defendant does not oppose. In order to prepare for a status conference, and in consideration of the parties' expressed desire to move forward quickly in this case, the court requests that the parties file status reports proposing schedules for further proceedings by May 3, 2002, with the court to schedule a status confer-ence with the parties at a mutually convenient time soon thereafter.

**IT IS SO ORDERED.**